## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **DORSEY G. GANN,** | ) | |
| | ) | |
| **Movant,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:12-cv-00747** |
| | ) | **Judge Trauger** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

### M E M O R A N D U M

The movant,[1] proceeding *pro se*, has filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.  (Docket No. 1).  The movant presently is incarcerated at the Federal Correctional Institution in Ashland, Kentucky.

### I.        Procedural Background

On December 12, 2002, a federal grand jury in the Middle District of Tennessee indicted the defendant for Production of Child Pornography, in violation of 18 U.S.C. § 2251(a) (Count One, involving daughter JG[2]); Production of Child Pornography, in violation 18 U.S.C. § 2251(a) (Count Two, involving daughter AG); Receiving Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A)(Count Three); two counts of Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B)(Counts Four and Five); and one count of Criminal Forfeiture, pursuant to 18 U.S.C. § 2253(a)(Count Six).  *See United States v. Dorsey Gawayne Gann*, No. 3:02-cr-00209 (M.D. Tenn. 2002)(Echols, J.)(Docket No. 1).

---

[1]  Throughout this memorandum, Dorsey G. Gann is referred to as Gann, the movant, and defendant interchangeably.

[2]  The minor victims will be referred to by their initials only.

1

On September 25, 2003, the defendant filed a Motion to Dismiss Counts One and Two of the Indictment, contending that his production of child pornography using his own daughters did not constitute interstate commerce because there was insufficient nexus between his activities and interstate commerce to bring him within a constitutional construction of the statute. (*Id.*, Docket No. 14). The court denied the motion in an order dated December 1, 2003. (*Id.*, Docket No. 25).

On February 2, 2004, the defendant entered a guilty plea to Counts Two and Three of the Indictment, pursuant to a plea agreement with the government,[3] in which the defendant reserved the right to appeal the district court's denial of his motion to dismiss. The plea agreement contained an explicit waiver of all appeal rights related to sentencing.[4]

On June 14, 2004, the court accepted the defendant's guilty plea and sentenced the defendant to a term of 210 months' imprisonment, to run concurrently with his state sentence. (*Id.*, Docket No. 48). This was the agreed-upon sentence in the plea agreement. Pursuant to the plea agreement, the government dismissed counts One, Four, and Five. (*Id.*)

The defendant timely appealed the district court's denial of his motion to dismiss Count 2 of the Indictment as permitted by the plea agreement, and the Sixth Circuit Court of Appeals affirmed the district court's ruling on December 21, 2005. (*Id.*, Docket No. 53). The defendant filed a petition for rehearing *en banc* on January 3, 2006, and that petition was denied on March 24, 2006. The defendant's petition for writ of certiorari to the United States Supreme Court was denied on October 2, 2006.

---

[3] The letter plea agreement was not docketed in Gann's criminal case (No. 3:2-cr-00209). For reference purposes, the court has entered it on the docket of this case.

[4] The waiver did not apply to claims of prosecutorial misconduct, ineffective assistance of counsel, or if the court departed upward in sentencing the defendant. (*Id.*, Docket No. 47 at p. 5 ¶ 15).

2

## II.    The Instant Motion

On July 19, 2012, the movant filed the instant § 2255 motion (Docket No. 1) and a declaration (Docket No. 3).   Upon preliminary review of the motion, the court noted that Gann appeared not only to challenge the imposition of his sentence but also the execution of his sentence. (Docket No. 5 at p. 1).  Thus, the court entered an order granting Gann fourteen days within which to decide whether he intended to pursue (1) only an action pursuant to 28 U.S.C. § 2255; (2) only an action pursuant to 28 U.S.C. § 2241; or (3) two distinct actions–one pursuant to § 2255 and the other action pursuant to  § 2241.  (*Id*. at pp. 2-3).  Gann submitted a response clarifying his intention: to pursue an action pursuant to  § 2255 only.  (Docket No. 8 at p. 1).

In his § 2255 motion, the movant presents one ground for relief.   The motion alleges that the defendant's attorney[5] provided ineffective assistance of counsel at sentencing because he failed to move for a downward adjustment to the defendant's sentence under U.S.S.G. § 5G1.3 or otherwise ensure that Gann's time spent in state custody would fully count toward his 210 months' imprisonment in federal custody.   The movant contends that, had defense counsel properly moved the district court under § 5G1.3 or otherwise, the court could and would have taken steps to ensure that his federal sentence ran fully concurrent with his state sentence.  The movant names the United States of America as the respondent.  (Docket No. 1).

Pursuant to Rule 4, Rules– Section 2255 Proceedings, the court conducted a preliminary examination of the motion and determined that it was not readily apparent on the face of the motion that the movant is not entitled to relief.   (Docket No. 9).  Accordingly, the court entered an order on August 21, 2012, directing the respondent to answer or otherwise respond to the motion.  (*Id.*)

---

[5] The defendant was represented by Doug Thoresen of the Federal Public Defender's Office in Nashville, Tennessee.

3

The respondent filed a response, asserting that the court should deny the motion and dismiss the action (Docket No. 17), to which the movant submitted a reply in opposition (Docket No. 21).

## III.    Facts

The pertinent facts regarding the underlying conviction are taken verbatim from the opinion of the Sixth Circuit Court of Appeals on direct appeal:

> Gann has three daughters: two by his current wife, Cindy Gann, and one by his former wife, Carmen Bragg. In the spring of 2002, Gann's daughter by his former wife ("JG") was sixteen years old, while his daughters by his current wife were ten years old ("AG"), and five years old.

> Sometime in 1998 or 1999, Gann began sexually abusing his eldest daughter, JG, who was then twelve or thirteen years old and living with her father. The abuse continued until she was sixteen years old. Near JG's thirteenth birthday, Gann forced her to lie down on the couch and close her eyes. He then videotaped her as he undressed and fondled her. He coerced her cooperation by threatening to videotape her younger half-sisters if she refused. Gann later destroyed this videotape because the lighting was poor.

> During July of 2001, Gann compelled JG into making a second videotape, again coercing her by threatening to videotape her half-sisters instead. JG agreed to be videotaped, but only if her father left the room. Gann provided lingerie and sex toys, which JG used to perform sexual acts in front of the videocamera after Gann had left the room.

> In approximately June of 2002, Gann took sexually explicit, nude photographs of his middle daughter, AG, who was ten years old at the time. On July 3, 2002, JG got into an argument with her father regarding his attempts to get her to make a third video and an incident where Gann approached JG's seventeen-year-old friend to ask if he could photograph her breasts. After this argument, JG reported Gann's abuse to her mother, Carmen Bragg, who filed a report of sexual abuse with the Gallatin Police Department ("GPD").

> During a search of Gann's home, GPD officers found videotapes, photographs, compact discs, and video and computer equipment. On Gann's computer hard drive or compact discs, police found the second video of JG and the photographs of AG, along with twelve pornographic photographs of known children. One directory on Gann's computer contained over 1500 pornographic files. Of the hundreds of sexually explicit images found on Gann's computer and compact discs, most of them were of children. Defendant admitted to being addicted to child

4

pornography, to using his daughters to produce child pornography (including videotaping JG and photographing AG), and to downloading child pornography from the Internet.

The computer used to receive and store the child pornography, the compact discs used to store the video of JG, the video camcorder used to videotape JG, and the digital camera used to photograph AG were all produced outside the state of Tennessee.

The child pornography of Gann's daughter was produced within Gann's Tennessee home. During the investigation and subsequent prosecution, no evidence was ever presented, nor stipulated to, that the images of Gann's daughters ever left his home, that Gann ever sold, traded, or distributed them, or that he ever intended to do so. There was no evidence that he sold, traded, or distributed the other child pornography in his possession.

On July 8, 2002, Gann pled guilty in state court to one count of aggravated sexual battery and two counts of sexual battery for the sexual abuse of his daughter JG that occurred between 1997 and 1998, when JG was twelve and thirteen years old.

On December 12, 2002, Gann was charged in a six-count federal indictment for the later incidents that occurred in 2001 and 2002, as follows:

Count 1: Production of Child Pornography in violation of 18 U.S.C. § 2251(a) (by videotaping his daughter JG).

Count 2: Production of Child Pornography in violation of 18 U.S.C. § 2251(a) (by photographing his daughter AG).

Count 3: Receiving Child Pornography, in violation of 18 U.S.C. § 2252(a)(2)(A).

Count 4: Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) (by possessing images stored on materials which had traveled in interstate commerce).

Count 5: Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) (by possessing images which had traveled in interstate commerce).

Count 6: Criminal Forfeiture, pursuant to 18 U.S.C. § 2253(a).

On September 25, 2003, Gann filed a motion to dismiss Counts 1 and 2 of the

5

indictment, the charges dealing with production of child pornography. Gann argued that § 2251(a), which was enacted pursuant to Congress's authority under the Commerce Clause, was unconstitutional as applied to him because his production of child pornography using his daughters was intrastate and noneconomic, and, as a result, there was an insufficient nexus between his activities and interstate commerce. The district court denied Gann's motion.

On February 2, 2004, in accordance with a plea agreement with the Government, Gann entered a guilty plea to Count 2, production of child pornography involving daughter AG, and Count 3, receiving child pornography. In the agreement, Gann waived his right to appeal his sentence, but reserved the right to appeal the district court's denial of his motion to dismiss. The district court sentenced Gann to 210 months to run concurrent with his state sentence. The remaining counts were dismissed pursuant to the plea agreement.

*United States v. Dorsey Dewayne Gann*, 160 Fed. Appx. 466, 468-69 (6th Cir. 2005).

Gann was sentenced in federal court on June 14, 2004, and was returned to the custody of the Tennessee Department of Corrections to finish an undischarged state sentence. (Docket Nos. 1 and 3 & Attachs.). Upon completing the Tennessee sentence on February 4, 2011, Gann was transferred to the custody of the BOP. (*Id.*) At that time, the BOP had not yet calculated Gann's federal sentence. (*Id.*)

In March 2011, during his initial meeting with his unit team at FCI-Ashland, Gann learned for the first time that his federal sentence might not be credited for the time he spent in state custody between July 8, 2002, and June 13, 2004. (*Id.*) His inmate services manager told Gann that he could not yet seek redress for the finding, as no official decision had been rendered and certified. (*Id.*) After waiting for "several months" for a decision, Gann initiated a mandatory informal resolution attempt in December 2011, and received an unfavorable decision in January 2012. (*Id.* & Attachs.) The BOP determined that Gann's federal sentence began on June 14, 2004, the date of his federal sentencing, and that 18 U.S.C. § 3585(b) prohibited the crediting of any of the time between July 8, 2002, and June 13, 2004 to his federal sentence. (*Id.*) Gann then initiated the BOP's formal

6

administrative remedy process. (*Id.*) On February 9, 2012, in reviewing Gann's first appeal in the administrative remedy process, the BOP awarded Gann prior custody credit for all "Qualified State Pre-Sentence" time Gann spent in custody between his arrest and sentencing in state court (July 8, 2002, through March 6, 2003) as "*Willis* time" based on the *Willis v. United States*, 449 F.2d 923 (5th Cir. 1971) decision. (*Id.*) However, in that same decision, the BOP Regional Director determined that the restrictions imposed by 18 U.S.C. § 3585(b) prohibited any additional credit for the time Gann spent in custody before his federal sentencing on June 14, 2004. (*Id.*)

Gann continued the BOP's administrative remedy process, asserting that he should receive prior custody credit from March 7, 2003, through June 13, 2004. (*Id.*) On May 17, 2012, the BOP Central Office denied Gann's administrative appeal of how his federal sentence was calculated, the final step in the BOP administrative review process. (*Id.*)

## IV.    Analysis

A prisoner who moves to vacate his sentence under § 2255 must show that the sentence was imposed in violation of the Constitution or laws of the United States, the court was without jurisdiction to impose such sentence, the sentence was in excess of the maximum authorized by law, or the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. To prevail on a § 2255 motion, a movant "must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Grifin v. United* States, 330 F.3d 733, 736 (6th Cir. 2003)). Non-constitutional errors are generally outside the scope of § 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A movant can prevail on a § 2255 motion alleging non-constitutional error only by establishing a "fundamental defect which inherently

7

results in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process." *Watson v. United* States, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotations omitted)).

## A. The movant's § 2255 motion was timely filed.

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a *habeas* petition pursuant to 28 U.S.C. § 2255 must be filed within a year of the latest of four (4) circumstances:

(1)     the date on which the judgment of conviction becomes final;

(2)     the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3)     the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)     the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

The respondent contends that Gann's one-year statute of limitation period for filing a § 2255 motion began running on October 2, 2006, when the Supreme Court denied Gann's petition for writ of certiorari, pursuant to 28 U.S.C. § 2255(f)(1).   Thus, according to the respondent, Gann was required to submit his § 2255 motion on or before October 1, 2007; since Gann filed his motion on July 19, 2012, the respondent insists the motion is untimely.   (Docket No. 17 at p. 8).

Gann, on the other hand, contends that his motion is timely because it was not until May 17, 2012, that the BOP denied Gann's final administrative appeal of how his federal sentence would be

8

calculated. Thus, Gann argues, the limitations period began at that point because, until then, he could not have known, or discovered through the exercise of due diligence, "the facts supporting his claim," *i.e.*, that Gann's time spent in state custody from March 7, 2003 to June 13, 2004 would not count toward his 210 months' imprisonment in federal custody, as he had understood it would. (Docket No. 21 at pp. 2-4). Because Gann filed his § 2255 motion within two months of May 17, 2012, Gann contends that his motion was filed well within the one-year statute of limitations.

Section 2255(4), on which Gann relies for his timeliness argument, provides that the one-year period of limitations runs from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." Paragraph seven (7) of Gann's plea agreement provides that his federal sentence was to run concurrently with his undischarged Tennessee sentence "pursuant to USSG § 5G1.3(c)." Gann understood this provision to mean that his federal sentence would be fashioned in such a way as to credit Gann for the time he spent in custody between his initial arrest by Tennessee authorities on July 8, 2002, until the day his federal sentence commenced on June 14, 2004. Gann's understanding was confirmed when Gann's counsel asked the sentencing judge whether Gann's state and federal sentences would run concurrently, and the court answered in the affirmative. (No. 3:02-cr-00209, Docket No. 52 at p. 71). Gann alleges that he later discovered that his attorney failed somehow to effectuate the terms of the plea agreement for a fully concurrent sentence when the BOP certified Gann's federal sentence calculation. Gann learned of this "fact," at the earliest, in January 2012. [6]

---

[6] Although he may have learned of the *possibility* that he would not receive full credit in March 2011, this information provided to Gann by his inmate services manager was preliminary, and Gann would not have been permitted to initiate the BOP administrative remedy process until a certified decision was issued. Moreover, because the information was preliminary and casually shared with Gann, the final, certified decision by the BOP could have been different.

The evidence before the court at this time shows that Gann was diligent in pursuing BOP remedies from the time that the BOP certified his sentence calculation and informed him that his federal sentence would not be credited for all of the time he had spent in custody prior to receiving his federal sentence. Although it is true that Gann could have simultaneously pursued a remedy through the BOP administrative process *and* an action in this court under § 2255, Gann's choice to proceed first with the BOP administrative appeals process and see it through fruition could well have saved valuable court resources, as a fully favorable decision by the BOP would have provided Gann with the relief he now seeks. Notably, Gann received a partially favorable ruling by the BOP on February 9, 2012, and, at that time, Gann had not even exhausted all of the available steps in the BOP administrative remedy process.

The court finds that, under the unique facts presented in this case, the instant motion to vacate, set aside, or correct sentence under § 2255 was timely filed on July 19, 2012. *See United States v. Smith*, 101 F. Supp.2d 332, 337 (W.D. Pa. 2000)(finding that movant's § 2255 motion was timely filed under § 2255(4), where movant could not have learned that BOP did not consider his federal sentence to have been running concurrently to his state sentences until November 23, 1998, and filed his motion to vacate on October 18, 1999; government conceded the motion was timely under § 2255(4)); *see also United States v. Woody*, 2008 WL 2477658, at *3 (N.D. Fla. June 18, 2008)(where movant argued that his § 2255 motion was timely under § 2255(f)(4), court found that movant failed to demonstrate he had exercised due diligence in discovering the commencement date of his federal sentence because he had failed to make "the necessary inquiries of his BOP case manager" and the court within a year of arriving at federal prison after finishing state sentence; as to § 2255(4), court noted "[t]his was the route which the Sixth Circuit pointed out" to movant when

he filed a § 2241 in the Eastern District of Michigan, where he was confined at the time and agreed to recharacterize his motion as one under § 2255).[7]

**B.      The movant has not met his burden of establishing his claim of ineffective assistance of counsel.**

Gann struggles hard to characterize his claim as one challenging the validity of the court's sentence in light of counsel's alleged constitutionally deficient and ineffective representation, and not one challenging the calculation of his sentence by the BOP.[8]   He claims that defense counsel failed to assure that his federal sentence would run concurrent with his state sentence, as provided in the plea agreement.

The Sixth Amendment to the United States Constitution guarantees the right of a person accused of a crime to the effective assistance of counsel.   To prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) deficient performance of counsel and (2) prejudice to the defendant.  *See Bell v.  Cone*, 535 U.S. 685, 694-95 (2002).   Trial counsel's performance is deficient when it falls below an objective standard of reasonableness.  *See Strickland v. Washington*, 466 U.S. 668, 686-87 (1984); *Combs v. Coyle*, 205 F.3d 269, 278 (6th Cir. 2000), *cert. denied*, 531 U.S. 1035 (2000).   In assessing performance, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices

---

[7]  *But see United States v. Carlsen,* 2012 WL 1194303, at *4 (D. Mont. Apr. 10, 2012)(the facts supporting petitioner's claim that counsel was ineffective at sentencing for failing to identify U.S.S.G. § 5G 1.3 as relevant to his case "were known, at the latest, at the conclusion of the sentencing hearing, even if neither [petitioner] nor [counsel] nor anyone else appreciated their legal significance at the time."); *Hodge v. United States,* 2011 WL 3565227, at *9 (M.D. Tenn. Aug. 15, 2011)(Sharp, J.)(petitioner's claim of ineffective assistance for failing to secure an adjustment under § 5G 1.3 began running on the date his conviction became final, not when BOP issued its recalculation regarding credit for time spent prior to sentencing); *United States v. Ruby*, 2010 WL 1403950, at **3-5 (D. Vt. Feb.2, 2010) (where petitioner argued counsel was ineffective because he "failed to properly address under § 5G 1.3 pretrial custody time," limitations period began running when conviction became final, not when BOP informed petitioner of its calculations).

[8]  The government strongly argues that this case is truly "a disguised petition pursuant to 28 U.S.C. § 2241." (Docket No. 17 at 9).

Case 3:12-cv-00747   Document 26   Filed 04/24/13   Page 11 of 15 PageID #: 94

made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91. Reasonable attorneys may disagree on the appropriate strategy for defending a client. *Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004).

The prejudice element requires a petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In the context of a guilty plea, to satisfy the second *Strickland* prong, a petitioner must show that, but for counsel's alleged errors, he would not have pleaded guilty but would have insisted upon going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Miller v. Straub*, 299 F.3d 570, 578 (6th Cir. 2002).

A court hearing an ineffective assistance of counsel claim must consider the totality of the evidence. *Strickland*, 466 U.S. at 695. "The determinative issue is not whether petitioner's counsel was ineffective but whether he was so thoroughly ineffective that defeat was 'snatched from the jaws of victory.'" *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996)(quoting *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992)(*en banc*)). "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689. The movant bears the burden of establishing his claim of ineffective assistance of counsel by a preponderance of the evidence. *Id.*

In determining whether defense counsel was ineffective in the way Gann contends, the court

12

considers whether there was anything reasonably competent and professional counsel could have and should have done differently to ensure that Gann would receive credit for the time served in state custody between March 7, 2003 and June 13, 2004.[9]   The answer to that question is no.

The defendant's plea agreement provided, as to concurrency, as follows:

> 7.      The parties agree that the defendant will be sentenced to 210 months.  The parties further agree that the sentence of 210 months years [sic] will run concurrent to the State of Tennessee sentence of ten years in Case No. 652-2002, pursuant to USSG § 5G1.3(c).

(Docket No. 23 at 4)  The Judgment and Commitment Order imposed a sentence of 210 months, which "shall run concurrent to any state sentence imposed."  (No. 3:02-cr-00209, Docket No. 48 at 2)  The defendant got exactly what he had bargained for in his sentencing.

USSG § 5G1.3 addresses the imposition of a sentence on a defendant subject to an undischarged term of imprisonment.  Subsection (b) mandates that the federal sentence be imposed to run concurrently to the undischarged term of state imprisonment when the state sentence "resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense. . . ."  And Application Note 2 for that subsection provides: ". . .the court should adjust the sentence for any period of imprisonment already served as a result of the conduct taken into account in determining the guideline range for the instant offense if the court determines that period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons."  Had the defendant bargained for and received a sentence under subsection (b), he might have a valid argument that his lawyer should have pressed, at sentencing, for the court to follow Application Note

_____

[9] Through the BOP administrative process, Gann secured federal credit for his state time served from July 8, 2002 (the effective date of his state sentence) to March 7, 2003 (the date his state sentence was imposed).

13

2 and impose a lesser sentence in order to assure that he would get credit toward his federal sentence for all of the time served in state custody.

Instead, what the defendant bargained for, and received, was a sentence under subsection (c), providing: "In any other case, the sentence for the instant offense *may* be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." (emphasis added). Therefore, there was nothing additional that defense counsel could have done at the sentencing to assure that the defendant would receive credit for the period of time between the imposition of his state sentence on March 7, 2003 and the imposition of the federal sentence on June 14, 2004, the period for which he alleges he received no federal credit because of ineffective assistance of counsel. Moreover, there is no indication in the plea agreement, the sentencing transcript, or any other part of the record that the parties contemplated or intended that the defendant would receive federal credit for the time already served on his state sentence at the time he was sentenced in federal court, as opposed to federal credit only for the time served on the state sentence after his federal sentence was imposed. Indeed, the fact that the plea agreement specifies § 5G1.3(c), instead of § 5G1.3(b), is some indication that the agreement was for the latter.

The defendant does not maintain that there was ineffective assistance of his counsel in the negotiation of the plea agreement. However, even had he made that argument, he would have to show that, instead of accepting the generous plea agreement offered to him, he would have chosen to go to trial and risk the imposition of a sentence of additional substantial time. Not only has the defendant failed to carry his burden as to that assertion, but he does not even make the argument.

14

**V.     Conclusion**

For the reasons expressed herein, the record conclusively shows that the defendant is not entitled to relief.  Therefore, an evidentiary hearing is not warranted.  *Green v. United States*, 65 F.3d 546, 548 (6th Cir. 1995).  The defendant's request for relief pursuant to 28 U.S.C. § 2255 will be denied.

When the district court denies a ground for relief on the merits in a *habeas corpus* action, a certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Because the petitioner has not made a substantial showing of a constitutional right as to his claim of ineffective assistance of counsel, a certificate of appealability will not issue with respect to that claim.

An appropriate order will enter.

_____
Aleta A. Trauger
United States District Judge

15